UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>O'REILLY AUTOMOTIVE STORES, INC. D/B/A O'REILLY AUTO PARTS,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful sex-based and retaliatory employment practices and to provide appropriate relief to Charging Party India McCoy and a class of former and/or current female employees who were/are adversely affected by such practices. As alleged with greater specificity below, male employees and managers at O'Reilly Automotive Stores, Inc. d/b/a O'Reilly Auto Parts, subjected Charging Party and a class of female employees to a sexually hostile work environment based on their sex, including groping, sexually charged comments, and demands for sex. Moreover, Charging Party India McCoy was retaliated against for engaging in protected activity and then constructively discharged based on her sex.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.

1

§ 2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper because a substantial part of the events giving rise to Title VII violations occurred at an O'Reilly Automotive Stores, Inc. d/b/a O'Reilly Auto Parts ("O'Reilly") place of business located in Orlando, Florida, which is within the jurisdiction of the U.S. District Court for the Middle District of Florida, Orlando Division.

## PARTIES

3. Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission" of "the EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant O'Reilly, a Missouri corporation, is registered to do business in Florida, has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

5. At all relevant times, O'Reilly has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Charging Party India McCoy ("Charging Party") filed a Charge of Discrimination with the Commission alleging that O'Reilly violated Title VII.

7. The Commission issued a Letter of Determination on November 7, 2018, finding reasonable cause to believe that O'Reilly subjected Charging Party and a class of female employees to a sexually hostile work environment, that O'Reilly retaliated against Charging

Party, and that O'Reilly had constructively discharged Charging Party.

8. Prior to initiating this lawsuit, the Commission attempted to correct the unlawful employment practices alleged herein through informal methods of conciliation, conference, and persuasion, to remedy the discriminatory practices and provide appropriate relief.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### General Background

10. O'Reilly is a retail distributor of automobile parts headquartered in Springfield, Missouri.

11. O'Reilly employs over 70,000 people and operates over 4,500 stores nationwide.

12. Charging Party started working for O'Reilly in August 2015 as a delivery specialist at Store 4321, located in Orlando, Florida. Charging Party was constructively discharged in August 2016.

13. O'Reilly Store 4321 has two sections: a "hub" section and a "commercial" section.

14. The hub section services other O'Reilly stores, so hub delivery drivers deliver parts to other O'Reilly stores.

15. The commercial section services O'Reilly's commercial clients, so commercial delivery drivers deliver parts to O'Reilly's commercial clients.

16. The layout of the physical space at Store 4321 includes: a retail area out front; a set of doors that connect the retail area to a large warehouse and office space housing the commercial section; and another set of doors that connect the commercial section area to the hub area housing the hub section. The layout is such that to get to the space housing the hub area,

employees must pass through the space housing the commercial area.

17. The commercial and hub areas are filled with shelves holding parts.

18. Commercial drivers and hub drivers must pull parts for deliveries from shelves located in their own respective areas and must go into the other area to pull parts.

19. Tracy Leonard Clark ("Clark") was a manager within the commercial section. One of his responsibilities was to give drivers delivery assignments. Delivery drivers went to him and got "delivery tickets" for their deliver assignments. Clark also dictated delivery drivers' schedules.

20. A store manager managed all of Store 4321.

21. In 2015 and 2016, the store managers for Store 4321 were Mr. Ashley ("Ashley"), followed by Raj Singh ("Singh"), then Gus Ocampo ("Ocampo").

<u>Charging Party</u>

22. On a daily basis Clark made sexually-charged comments about female employees directly to female employees and/or to male employees around the female employees so the female employees could hear the sexually charged comments.

23. Multiple times a week Clark touched female employees in a sexual manner.

24. Examples of comments Clark made to Charging Party include: "Can I eat your vagina?"; "Follow me to my house so I can eat you."; "Are you going to let me eat that pussy?"

25. Clark also touched Charging Party in sexual manner, for example, pretending to clean something off her shirt but touching her breast; and rubbing and brushing up against Charging Party when she was in the commercial area, standing in the aisle, pulling parts from shelves.

26. Charging Party also saw Clark touch other female employees and heard him make

sexually-charged comments to other women who worked at the store.

27. Clark's harassment of Charging Party escalated from the time she was hired to late November 2015, when one day Clark grabbed Charging Party's crotch, and another day when Clark brushed his penis against Charging Party's butt.

28. In early December 2015, Charging Party met with Singh to discuss an alleged driving infraction Charging Party committed. Charging Party and Singh finished discussing the infraction, without Singh issuing Charging Party any discipline. Then Charging Party told Singh about Clark's sexually-charged comments and touching. Immediately after Charging Party told Singh about Clark's sexual harassment, Singh told Charging Party she had to go home.

29. Charging Party called Singh every day to ask if she could return to work. After approximately four days, Singh told Charging Party that "corporate" had decided to terminate her employment.

30. Charging Party called "corporate" to ask if she was terminated. The official she spoke to told her that they had no record of her being fired and that she could not be fired for one infraction because they had a point system where she would get terminated if she passed the point limit.

31. Charging Party returned to work and told Singh that an official from the corporate office told her she had not been terminated. Singh said that she had been "re-hired."

32. Soon after Charging Party returned to work, Clark called her a "ridiculous monkey" and pointed at her vagina.

33. In February 2016, Clark put his arms around Charging Party, pinning her to a table in the commercial area, and started doing humping motions. Charging Party told Clark to stop, but Clark kept holding her pinned to the table. He let her go when someone walked by.

34. In March 2016, Clark grabbed Charging Party again and she told him to take his hands off her.

35. On or about March or April 2016, Charging Party complained about Clark's sexual harassment to the new store manager Ocampo.

36. In April 2016, Charging Party made a complaint about Clark's harassment to the corporate office. Charging Party reported to the corporate office that Clark sexually harassed her and other female employees at the store.

37. In May 2016, O'Reilly sent men to the store to investigate, however, the men who interviewed Charging Party laughed at her during the interview. The investigation was not kept confidential.

38. After the investigation, Clark started retaliating against Charging Party. For example, when Charging Party did not answer calls from Clark on the vehicle radio that was known to be broken, he yelled at her: "You want to take your mother fucking ass home?"; Clark sabotaged Charging Party's work, sending her on deliveries with the correct invoice but wrong parts; and Clark caused Charging Party's schedule and hours to change.

39. Charging Party was presented with a final warning dated June 30, 2016, issued by Regional Southeastern Divisional HR Manager Tim Shaw, and signed by District Manager Dave Lugo.

40. Even though Shaw and Lugo signed the final written warning, it was Store Manager Ocampo who gave Charging Party a copy of the final written warning during an in-person meeting. Clark walked into the meeting and sat next to Charging Party intimidating her while Ocampo presented her with the final written warning.

41. Throughout the spring and summer of 2016, Charging Party cried repeatedly

before going to work at O'Reilly. The sexual harassment had continued, Clark was retaliating against her through increased abusive conduct, and her hours were reduced.

42. Because of the harassment and retaliation, Charging Party resigned on August 1, 2016.

43. Because of O'Reilly's unlawful conduct, Charging Party was harmed and suffered damages.

## Class of Female Employees

44. On a daily basis Clark made sexually-charged comments about female employees directly to female employees and/or to male employees around the female employees so the female employees could hear the sexually charged comments.

45. Multiple times a week Clark touched female employees in a sexual manner.

46. Female employees who worked at O'Reilly with Clark were subjected to daily sexual harassment through touching, comments, and witnessing other female employees being subjected to sexual comments and touching.

47. Customers called the store and/or the corporate office to complain about Clark after witnessing him touch female employees in a sexual manner.

48. Zayona Akins ("Akins") started working as a driver at O'Reilly on or about January 2015.

49. When Akins went to see Clark to get her "delivery tickets" he would make comments to her, such as: tell Akins he would give her oral sex; describe the things he would do to Akins' vagina; tell Akins he would bend her over, put his private parts into her and make her moan; tell Akins "all day every day," referring to sex; tell Akins "your butt's so big I would be up there and ride on it all day."

7

50. Akins heard Clark make similar comments to other female employees as they got their "delivery tickets" from Clark.

51. Akins saw other male employees touch female employees while other male employees laughed.

52. Akins saw a male employee, Cliff, who was a driver, show Clark porn sites with the volume up so everyone could hear. Cliff also showed Clark pictures on his phone of naked women.

53. Akins saw Clark go into a bathroom while another female employee, Arnancia Symond, was cleaning the bathroom. Other female employees tried to stop Clark from going inside while Symond was inside by herself, but no one could stop him.

54. Akins saw, heard, or was subjected to sexually-charged touching or comments everyday she went to work.

55. Akins complained about the sex harassment directly to Clark. Clark would respond by making comments like, "I can touch you if I want."

56. Akins complained about the sex harassment to the store managers Ashley, Singh, and Ocampo. The store managers responded with comments such as: "You're grown, right?"; "This is how we spend our day."; "No one is going to hurt you."; "I'm sure you can just get over it."

57. On or about August 2015, Akins called the TIPS hotline provided by O'Reilly for complaints and left her name, contact information, and the store number, but no one called her back.

58. On or about the fall of 2015, Akins was transferred to work as a driver from the hub section to the commercial section. After she transferred to the commercial section, she was

subjected to more frequent sexually-charged comments and touching because she worked in the same area as Clark—the commercial area. She asked Singh to transfer her back to the hub section and told Singh she wanted to be transferred back to the hub section because of Clark's sexual harassment.

59. Akins was terminated on or about January 2016, shortly after telling Singh that she wanted to transfer back to the hub section because of Clark's harassment.

60. Arnancia Symond ("Symond") worked at O'Reilly as a driver starting in February 2015.

61. Symond saw and heard the daily sexually charged comments and touching to which Clark subjected Charging Party and other female employees.

62. One day while Symond was cleaning a bathroom, Clark came up behind her and grabbed her butt.

63. On another occasion Clark touched Symond while she was near the back door.

64. Symond was also touched by another male employee.

65. Symond knew that other employees had complained about or reported Clark's harassment.

66. Symond did not report or complain about the harassment because the store was male-dominated, and she was afraid.

67. Other female employees who worked at O'Reilly with Clark were also subjected to daily sexual harassment through touching, comments, and witnessing other female employees being subjected to sexual comments and touching.

68. As a result of O'Reilly's unlawful conduct, a class of female employees of O'Reilly were harmed and suffered damages.

## STATEMENT OF CLAIMS

69. As set forth in paragraphs 22-43, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Charging Party to a sexually hostile work environment.

70. As set forth in paragraphs 44-68, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting a class of female employees that worked with Clark at O'Reilly Store 4321 to a sexually hostile work environment.

71. As set forth in paragraphs 28-43, Defendant engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Charging Party for engaging in protected activity.

72. As set forth in paragraphs 22-43, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by constructively discharging Charging Party because of her sex.

73. The effect of the practices complained of in paragraphs 22-68 has been to affect the terms and conditions of employment for Charging Party and a class of female employees that worked with Clark at O'Reilly Store 4321, to deprive them of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

74. The unlawful employment practices complained of in paragraphs 22-68 were intentional.

75. The unlawful employment practices complained of in paragraphs 22-68 were done with malice or with reckless indifference to the federally protected rights of Charging Party and the class of female employees that worked with Clark at O'Reilly Store 4321.

PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining O'Reilly, its officers, agents, servants, managers, employees, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including, but not limited to, permitting a sexually hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

B.   Order O'Reilly to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices;

C.   Order O'Reilly to make Charging Party whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of O'Reilly's unlawful employment practices including but not limited to reinstatement and/or front pay;

D.   Order O'Reilly to make Charging Party whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

E.   Order O'Reilly to make whole the class of female employees that worked with Clark at O'Reilly Store 4321, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Order O'Reilly to pay Charging Party punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

G. Order O'Reilly to pay the class of female employees that worked with Clark at O'Reilly Store 4321 punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and

I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Date: May 9, 2019                    Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

JAMES L. LEE
Deputy General Counsel
GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

ROBERT E. WEISBERG
Regional Attorney
Florida Bar No. 285676
KRISTEN M. FOSLID
Supervisory Trial Attorney
Florida Bar No. 0688681

s/ Beatriz Biscardi André
BEATRIZ BISCARDI ANDRÉ
Trial Attorney
New York Bar No. 4394599

                                                Beatriz.Andre@eeoc.gov
                                                U.S. Equal Employment
                                                Opportunity Commission
                                                Miami District Office
                                                Miami Tower
                                                100 S.E. 2nd Street, Suite 1500
                                                Miami, Florida 33131
                                                Tel: (305) 808-1803
                                                Fax: (305) 808-1835